UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-310-H

JOHN FUNKE                                                                PLAINTIFF

V.

MATT COOGLE, et. al.                                                      DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff, John Funke, has asserted state law claims of assault and battery and wrongful imprisonment and federal claims for violations of his civil rights under 42 U.S.C. § 1983 against the City of Elizabethtown and two of its police officers in their individual and official capacities (collectively, "Defendants").  Defendants now move for summary judgment on all claims, on the grounds that Police Officer Coogle ("Coogle"), the unknown police officer (collectively, "Police Officer Defendants") and the City of Elizabethtown are entitled to either sovereign or qualified immunity.

Plaintiff filed this Complaint in May 2011.  Discovery proceeded until completion in June 2012.  Thereafter, Defendants filed this motion.  For the reasons that follow, the Court will sustain the motion in part and deny it in part.

I.

At approximately 1:00 a.m. on December 12, 2009, as Police Officer Coogle drove northbound on Dixie Highway in Elizabethtown, Kentucky, he passed Plaintiff, who was traveling southbound on the same highway.  According to Coogle, drunk drivers are known to frequent this

stretch of the highway.[1]  As Plaintiff's vehicle approached Coogle's police car, Coogle claims that Plaintiff failed to dim his high beam lights.  Plaintiff denies this. Considering the time of night, that this highway is a known conduit for those consuming alcohol, and Plaintiff's failure to dim his high beam lights, Coogle turned his car around and pulled over Plaintiff's vehicle.  Turning off the highway to a side road where Plaintiff could stop his car for Coogle, Coogle claims that Plaintiff made a wide turn and his two right side tires left the road, another possible indicator of intoxication.  Again, Plaintiff denies this happened.  Upon speaking with Plaintiff, Coogle claims he smelled alcohol on Plaintiff's breath and noticed that Plaintiff's eyes were bloodshot.  Plaintiff explained to Coogle that he had allergies. Coogle claims that Plaintiff also spoke loudly, which Plaintiff credits to the blare of his diesel truck and to the natural resonation of his voice.

Coogle then asked Plaintiff to exit his vehicle.  After first refusing, Plaintiff consented to taking a portable breathalyser test.  Plaintiff recorded a 0.133, well over the legal limit of 0.08. Plaintiff maintains he was not intoxicated, claiming he only consumed two twelve-ounce beers earlier that day.  Plaintiff contends he told Coogle that physical injuries prevented him from performing field sobriety tests.  Nevertheless, Coogle administered the standard field sobriety tests over Plaintiff's protests.

Coogle asserts that Plaintiff first failed the horizontal gaze test, because his eyes jerked back and forth.  Coogle then found that Plaintiff failed the one-leg-stand test, as he swayed a great deal, lost his balance, and had to put his foot on the ground during the test.  Finally, Plaintiff refused the third test, the walk-and-turn test, because of his physical injuries.  Plaintiff denies that he refused to take the test.

---

[1]Elizabethtown is located in Hardin County, a dry county.  Locals oftentimes buy and consume alcohol at the military post at Fort Knox, which Dixie Highway connects to Elizabethtown.

Based on the abovementioned factors, Coogle decided to arrest Plaintiff for driving under the influence of alcohol. Plaintiff claims he sustained physical injuries when Coogle forced Plaintiff's arms behind his back to handcuff him. Plaintiff had endured several surgeries on both knees and his back over the past years, and more particular to the incident at issue, had undergone shoulder surgery a month before Coogle pulled him over. Plaintiff alleges that Coogle's handling of his arrest reopened or exacerbated his shoulder problems. Coogle took Plaintiff to jail, where he claims he was strip-searched, provided with ill-fitting garments, and placed in a suicide cell without a bed or blanket. Plaintiff was incarcerated for a short time before release, although it is unclear from the record the duration of his incarceration.

In April 2010, the Hardin County Attorney's Office requested that the Court dismiss without prejudice all charges against Plaintiff, because the prosecutor's office supplied erroneous information regarding the arrest. The Court dismissed Plaintiff's case. Plaintiff brought this lawsuit asserting damages caused as a result of his arrest and short imprisonment. Specifically, Plaintiff brought two state law tort claims, for assault and battery and wrongful imprisonment, and a general claim under 42 U.S.C. § 1983 for violations of his civil rights as established under the Fourth, Fifth, Seventh and Fourteenth Amendments to the United States Constitution.

II.

Having moved for summary judgment, Defendants bear the burden of demonstrating an absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties disagree on the factual predicates of this case, "not every issue of fact or conflicting inference presents a genuine issue of material fact which requires the denial of a summary judgment motion." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). W h e r e

Defendants move for judgment on immunity grounds, the Court will resolve all ambiguities and draw all reasonable inferences in favor of Plaintiff.  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Qualified immunity standards are different under Kentucky and federal laws.  The Court must apply Kentucky law to determine whether Defendants are entitled to immunity from state tort liability and apply federal law when assessing immunity for federal law claims.  *See Crawford v. Lexington-Fayette Urban Cnty. Gov't*, 2007 WL 101862, at *4 (E.D. Ky. Jan. 10, 2007)("[T]here is widespread agreement that state rules of sovereign immunity govern in federal court on issues related to alleged violations of state law."); *see e.g., King v. Taylor*, 694 F.3d 650, 662-64 (6th Cir. 2012)(applying federal law on qualified immunity to plaintiff's § 1983 claims and Kentucky law on qualified immunity to plaintiff's negligence claim).  The Court will thus address the substance of the motion for summary judgment in two parts, first as to the federal law claims and second as to the state law claims.

III.

Plaintiff brought federal claims against Coogle, an unknown officer with unclear involvement in the case, and the City of Elizabethtown under § 1983.  The Police Officer Defendants sued in their individual capacities are treated differently than the City of Elizabethtown and the Police Officer Defendants sued in their official capacities.[2]  The Court will examine the two types of immunity separately.

A.

_____

[2]Under federal law, government employees sued in their official capacities are considered arms of the government or agency or department for which they work, and therefore are afforded the same immunity as the state or agency or department itself.  *Myers v. Potter*, 422 F.3d 347, 357 (6th Cir. 2005).

4

The Court will first address Plaintiff's federal claims against the City of Elizabethtown, a municipality subject to 42 U.S.C. § 1983. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Under federal law, "municipalities do not enjoy immunity from suit–either absolute or qualified–under § 1983." *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993); *Denton v. Bedinghaus*, 40 F. App'x 974, 979 (6th Cir. 2002). The Eleventh Amendment offers no reprieve, as "[t]he bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances, but does not extend to counties and similar municipal corporations." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). Suing a municipal officer in his official capacity under § 1983 is the same as suing the municipality itself, so the same immunity principles apply to the Police Officer Defendants in their official capacities. *Kraemer v. Luttrell*, 189 F. App'x 361, 366 (6th Cir. 2006). Therefore, the City of Elizabethtown and Police Officer Defendants sued in their official capacities are not entitled to immunity on Plaintiff's federal claims.

Nevertheless, to assert a § 1983 claim against a municipality[3], the Court must determine "(1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for the violation." *State v. Elizabethtown Police Dep't*, 2010 WL 1196193, at *2 (W.D. Ky. Mar. 23, 2010)(citing *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992)). Defendants do not address the first requirement in any substantial manner.

Turning to the second prong of the test, "a municipality cannot be held liable under § 1983

---

[3] This applies equally to the Police Officer Defendants in their official capacities, so the Court will not engage in an independent analysis of federal municipal liability for the Police Officer Defendants in their official capacities. Moreover, "[t]he tortious actions of a single officer cannot form the basis for municipal liability unless that officer had policymaking authority." *Porter v. City of Columbus Div. of Police*, 396 F. App'x 197, 202 (6th Cir. 2010). Plaintiff does not assert that Coogle and the Unknown Officer possessed any policymaking authority,

on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.  The Court must distinguish between the acts attributed to the municipality itself and the acts of the municipality's employees.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988).  Accordingly, to impose liability upon a municipality, Plaintiff must assert that a municipal policy or custom caused the alleged constitutional deprivation. *Monell*, 436 U.S. at 690-91.  He must "identify the policy, connect the city itself and show that the particular injury was incurred because of the execution of that policy."  *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)(quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)(overruled on other grounds)).

As best the Court can determine, Plaintiff's constitutional claims relate to his arrest, wrongful imprisonment, and the use of excessive force.  Plaintiff has not identified any policy or custom that led to any of the actions which could conceivably have caused his federal constitutional injuries and the Court cannot find any.  *See Elizabethtown Police Dep't*, 2010 WL 1196193, at *2.  Accordingly, Plaintiff's federal law claims against the City of Elizabethtown and the Police Officer Defendants sued in their official capacities must fail.

## B.

The immunity of government employees sued in their individual capacities requires a different analysis.  They are entitled to qualified immunity when "performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The Sixth Circuit established a three-part test to resolve qualified immunity in these circumstances.  The Court must "determine (1) whether a constitutional right was violated; (2) whether that right was clearly established and one of

6

which a reasonable person would have known; and (3) whether the official's action was objectively unreasonable under the circumstances." *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008).

Although the Complaint does not specifically explain what acts comprised the federal constitutional violations, the facts as laid out in the Complaint point to three potential sources of unconstitutional actions–the arrest, wrongful imprisonment and excessive force, all of which are interrelated in many ways. Nevertheless, the Court will look at each potential constitutional violation separately to determine whether the Police Officer Defendants' actions satisfy the three-part test. For the reasons that follow, in each instance, Plaintiff's disagreement with the officers' conduct falls well short of constitutional dimensions.

1.

An arrest based upon probable cause is constitutional. *Virginia v. Moore*, 553 U.S. 164, 171 (2008). Probable cause is present where "the 'facts and circumstances within [the arresting officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent' person to conclude that an individual either had committed or was committing an offense." *United States v. Torres-Ramos*, 536 F.3d 542, 555 (6th Cir. 2008)(quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Viewed from an objective standpoint, the police officer must have more than mere suspicion, but less than evidence to support a prima facie case at trial for the arrest. *Id.* (quoting *United States v. Strickland,* 144 F.3d 412, 416 (6th Cir. 1998)).

Coogle argues that a number of factors contributed to his decision to arrest Plaintiff. First, Coogle cites Plaintiff's failure to dim his high beam lights for an oncoming vehicle, the lateness on a weekend night, and the officer's knowledge that intoxicated drivers frequented that portion of the highway returning from a bar, as evidence of probable cause to stop the vehicle. Thereafter, Coogle

7

cites smelling alcohol on Plaintiff's breath, seeing his bloodshot eyes, and failing a breathalyser test and two standard field sobriety tests, combined with an arguably combative attitude towards the police, to provide Coogle with more than enough probable cause for an arrest for driving under the influence.

Plaintiff disputes all of Coogle's subjective observations. However, the circumstances are overwhelming. And, the more objective breathalyzer and field sobriety tests provided Coogle with reasonably trustworthy information that Plaintiff had committed an offense and was subject to arrest. Defendants have shown that Coogle had probable cause to arrest Plaintiff, and therefore, the arrest was constitutional.

## 2.

Plaintiff seems to assert that his imprisonment also violated his rights to due process under the Fourteenth Amendment[4], protections against unreasonable seizures under the Fourth Amendment, and the right to a jury trial under the Seventh Amendment[5]. Those claims also fail the first prong of the Sixth Circuit three-prong test for qualified immunity.

"Here the nature of the claims of false arrest and false imprisonment by police officers acting while on duty are essentially the same since the alleged false imprisonment arises out of and logically follows the arrest of plaintiff[]." *Walker v. Schaeffer*, 854 F.2d 138, 142 (6th Cir. 1988). Moreover, "[t]he Supreme Court has held that police officers' defense of 'good faith' and 'probable cause,'

---

[4] Plaintiff also asserts a violation of the Fifth Amendment. However, the Fifth Amendment only circumscribes the actions of the federal government. *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000). Because the defendants in this case are the city government and employees thereof, any claims brought under the Fifth Amendment are unlawful.

[5] The Court recognizes the inherent flaw in presenting a wrongful imprisonment claim under the Seventh Amendment in the present factual circumstances.

8

which is available in common-law claims of false arrest and false imprisonment made against them, 'is also available to them in the action under § 1983.'" *Id.* (quoting *Pierson v. Ray*, 386 U.S. 547, 555 (1967)).

Since the Court determined that Coogle's arrest of Plaintiff was grounded upon probable cause, it almost certainly follows that Plaintiff's imprisonment as a consequence of that arrest was also constitutional. Indeed, given the results of his breathalyser test, taking Plaintiff into custody was necessary to protect the safety of others. Plaintiff's argument that his charges were ultimately dismissed does not undermine this conclusion. Therefore, the Police Officer Defendants enjoy qualified immunity as to federal claims concerning both Plaintiff's arrest and imprisonment.

3.

Finally, the Court addresses Plaintiff's excessive force claims, which are typically derived from the Fourth Amendment guarantee of freedom from unreasonable search and seizure. *Slusher*, 540 F.3d at 454. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake." *Id.* at 455 (quoting *Graham v. Connor*, 490 U.S. 389, 396 (1989)). To this end, the Court must use an objective reasonableness standard "that does not include the underlying motivation of the officer. . . . [T]he ultimate inquiry is whether the seizure was reasonable under the 'totality of the circumstances.'" *Id.* The Sixth Circuit directs courts to consider the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006)).

9

To support this claim, Plaintiff argues that Coogle's decision to handcuff Plaintiff's arms behind his back, rather than in front, amounts to excessive force.  Plaintiff's ground for this argument is that he informed  Coogle that he recently underwent shoulder surgery.  According to Plaintiff, the "behind-the-back" handcuffing was painful to him and exacerbated his existing injury.  Placing an offender's arms behind his back for handcuffing is a routine procedure for police officers effectuating arrests.  Coogle did nothing unusual in that regard.  However, the availability of an alternative to the typical behind-the-back handcuff does not alter the constitutional reasonableness of Coogle's actions. Coogle had no constitutional mandate either to believe Plaintiff's statement or to understand the significance of it.  He took no action which a reasonable officer would suspect could be harmful. Therefore, in these circumstances, failing to account for Plaintiff's unusual limitations does not amount to constitutionally excessive force.  As such, the Police Officer Defendants did not violate the U.S. Constitution with their actions, and are therefore entitled to qualified immunity as to all federal claims.

As a result of the foregoing analysis, all of the § 1983 claims are dismissed on the grounds of qualified immunity or for failure to satisfy the threshold requirements of § 1983 liability.

IV.

Plaintiff brings state law tort claims, for assault and battery and wrongful imprisonment, against the Police Officer Defendants in their official and individual capacities and against the City of Elizabethtown.  The officers sued in their official capacities are entitled to the same qualified immunity as the municipality which employed them. *Yanero v. Davis*, 65 S.W.3d 510, 521-22 (Ky. 2001).  Therefore, the Court's determination as to the City of Elizabethtown's sovereign immunity

will apply to the Police Officer Defendants sued in their official capacities as well.[6]   *Wilkerson v. City of Frankfort, Ky.*, 2009 WL 1033828, at \*10 (E.D. Ky. Apr. 16, 2009).  The Court will consider the municipal and individual capacity immunity issues in turn.

## A.

Kentucky sovereign immunity law treats municipal corporations differently than counties or agencies of state government.  "Cities, as municipal corporations, . . . while enjoying some immunity for much of this state's history, are now liable for negligent acts outside the legislative and judicial realms." *Comair, Inc. v. Lexington-Fayette Urban Cnty. Airport Corp.*, 295 S.W.3d 91, 95 (Ky. 2009).  Therefore, municipalities are immune from tort liability only in limited circumstances. *Ashby v. City of Louisville*, 841 S.W.2d 184, 186 (Ky. Ct. App. 1992).  More specifically, "[a] municipality is immune only for torts committed in the performance of legislative or judicial or quasi-legislative or quasi-judicial functions, and can otherwise be held vicariously liable for the torts of its employees." *Schwindel v. Meade Cnty.*, 113 S.W.3d 159, 165 (Ky. 2003); *see* KRS § 65.2003(3).

Defendants argue that their actions were quasi-judicial, insofar as Coogle gathered facts and made informed decisions.  Unlike previous cases wherein the Kentucky Supreme Court recognized that the defendants' actions were quasi-judicial or quasi-legislative and entitled to municipal immunity, the typical actions of police officers "do not include the type of regulatory functions such as those involved in [these recognized examples], including the holding of hearings, the weighing of evidence, or the exercise of judicial discretion and adjudication of parties' rights."  *Ashby*, 841 S.W.2d at 188 (holding that police officers' failure to protect a woman from the aggression of her

---

[6] Additionally, Defendants make an argument that Plaintiff's official capacity claims are duplicative of his claims against the City of Elizabethtown.  Because all claims against the Police Officer Defendants in their official capacities are actually claims against the City of Elizabethtown, naming both as defendants is redundant.  This argument as presented is without merit at this time.

children's father, against whom the woman had obtained an emergency protective order, did not fall within the protection of the statutory exception to municipal liability).  Defendants' actions in this case were likewise not quasi-judicial.

Therefore, the City of Elizabethtown and the Police Officer Defendants sued in their official capacities are not entitled to municipal immunity as to the Plaintiff's state law claims.

B.

Kentucky's rules for qualified immunity for those sued in their individual capacities is relatively straightforward:

> State-law qualified immunity protects officers from liability for discretionary acts, taken in good faith, within their scope of authority.  Bad faith can be demonstrated by objective unreasonableness or by a subjective intention to harm (i.e., a "corrupt motive").  As with federal qualified immunity, it is [Plaintiff's] burden to establish that the officers' actions were not performed in good faith.

*Williams v. Sandel*, 433 F. App'x 353, 363 (6th Cir. 2011)(citing *Yanero*, 65 S.W.3d at 522)(internal citations omitted).

A discretionary act is one that involves "the exercise of discretion and judgment, or personal deliberation, decision and judgment." *Yanero*, 65 S.W.3d at 522.  "[T]he very purpose of the doctrine of qualified immunity is to protect government officials exercising discretion from second-guessing of their good faith decisions made in difficult situations such as this." *Turner v. Nelson*, 342 S.W.3d 866, 878 (Ky. 2010).  The Court will apply this standard to Plaintiff's claims for assault and battery and wrongful imprisonment separately to determine whether Defendants are entitled to qualified immunity as to each claim.

1.

12

Plaintiff claims that Coogle is liable for assault and battery due to Coogle's physical handling of Plaintiff during his arrest. Coogle's decision to arrest Plaintiff and his choice to handcuff Plaintiff behind his back as a means of effectuating it are products of deliberation informed by Coogle's experience and personal observations of the situation. Thus, his decisions surrounding the arrest are inherently discretionary. *See Caudill v. Stephens*, 2007 WL 625348, at *1 (Ky. Ct. App. Mar. 2, 2007)(holding that a police officer's decision to arrest is a discretionary act). The third requirement for state law qualified immunity is that the government employees acted within the scope of their authority. Plaintiff concedes that the Police Officer Defendants were acting within the scope of their authority.

Plaintiff argues that the Police Officer Defendants acted in bad faith when Coogle forced his arms behind his back, re-injuring his shoulder. According to Kentucky law, bad faith can either be objective, insofar as the official "knew or reasonably should have known that the action he took . . . would violate the constitutional rights of the plaintiff", or subjective, insofar as the official "took the action with the malicious intention to cause a deprivation of constitutional rights or other injury." *Yanero*, 65 S.W.3d at 523 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982))(emphasis omitted). This Court has already determined that Coogle's actions did not constitute excessive force, and accordingly, cannot be objectively unreasonable. Therefore, the claim can only survive if this Court finds that the Police Officer Defendants acted with a subjective intent to harm. However, Plaintiff failed to allege or to produce evidence that Coogle intended to harm Plaintiff's shoulder when handcuffing him from behind. Thus, Plaintiff cannot overcome the police officers' entitlement to qualified immunity on the assault and battery claim.

2.

13

As to the wrongful imprisonment claim, Plaintiff must prove that the police officers detained Plaintiff without legal authority–"that is, detention without legal process." *Dunn v. Felty*, 226 S.W.3d 68, 71 (Ky. 2007).  Under Kentucky law, false arrest and false imprisonment essentially comprise the same tort. *Lexington-Fayette Urban Cnty. Gov't v. Middleton*, 555 S.W.2d 613, 619 (Ky. 1977)("It probably should be pointed out at this juncture that in instances involving officers of the law there is simply no distinction between false arrest and false imprisonment.").  "[F]alse arrest is a term that describes the setting for false imprisonment when committed by an officer." *Dunn*, 226 S.W.3d at 71.

Plaintiff seems to assert that his imprisonment was unlawful for three reasons: (1) the police made false charges in the Hardin District Court as a subterfuge to cover up for Coogle's mistreatment of Plaintiff, (2) he was subjected to a strip search, and (3) he was placed in a suicide cell.  As to the first allegation, the Court does not consider this a cognizable wrongful imprisonment claim.  To the extent that Plaintiff alleges false or fraudulent imprisonment against these defendants, the decision to bring charges against a criminal offender is discretionary.  *See Briscoe v. Roberts*, 2010 WL 1133330, at *1 (Ky. Ct. App. Mar. 26, 2010)(holding that a prosecutor's decision to bring charges against an individual was a discretionary act).  Plaintiff argues that the charges brought were made in bad faith to cover up for Coogle's mistreatment of Plaintiff.  However, as discussed previously, Coogle certainly possessed probable cause to make the arrest and proceed with taking Plaintiff into custody, making the decision to bring charges objectively reasonable.  Moreover, Plaintiff presents no evidence beyond bare assertions that the defendants acted with a corrupt motive.  As such, Plaintiff has not shown that bad faith exists in this circumstance.  Because the Police Officer Defendants were acting within the scope of their authority and had probable cause at the time of the

14

arrest, they are entitled to qualified immunity as to the fraudulent charges aspect of the false imprisonment claim.

As to the last two allegations, it is unclear what actions Plaintiff complains constitute wrongful imprisonment, which actors are responsible for these actions, and upon what legal basis courts recognize these actions as wrongful imprisonment. First, these actions do not amount to what might even constitute wrongful imprisonment. Regardless, there is no evidence that Coogle or the Unknown Officer were responsible for either the strip search or the cell classification. Moreover, both acts involved conduct that any officer would reasonably believe to be permissible. Accordingly, the wrongful imprisonment claim against the Police Officer Defendants in their individual capacities must also fail.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment is SUSTAINED as to the following claims which are DISMISSED WITH PREJUDICE:

(1)     All claims under 42 U.S.C. § 1983;

(2)     State law assault and battery and wrongful imprisonment claims against Coogle and the Unknown Police Officer in their individual capacities.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment on immunity grounds is DENIED as to the state law claims for assault and battery and wrongful imprisonment against the City of Elizabethtown and Officer Coogle and the Unknown Police Officer sued in their official capacities.

The Court will set a conference to discuss further actions in this case.

15

cc:     Counsel of Record